**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00001-MR-WCM**

| | | |
|---|---|---|
| **LESLIE V. HODGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **TOYOTA MOTOR CREDIT** | ) | |
| **CORPORATION, KEFFER MAZDA,** | ) | |
| **and MAZDA FINANCIAL SERVICES,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**THIS MATTER** is before the Court on Defendant Lake Norman Auto

Mall, LLC d/b/a Keffer Mazda's ("Keffer Mazda") "Motion to Dismiss in Lieu

of Answer, or in the Alternative, Motion to Stay Action and Compel

Arbitration" [Doc. 13], Defendant "Toyota Motor [Credit] Corporation d/b/a

Mazda Financial Services' Joinder in Defendant Keffer Mazda's Motion to

Dismiss in Lieu of Answer, or in the Alternative, Motion to Stay Action and

Compel Arbitration" [Doc. 15], the Plaintiff's Motion for Summary Judgment

[Doc. 25], and Defendant "Toyota Motor [Credit] Corporation d/b/a Mazda

Financial Services' Motion to Stay Motion for Summary Judgment or

Alternative Motion for Extension of Time" [Doc. 26].

# I. PROCEDURAL BACKGROUND

On January 3, 2022, the Plaintiff Leslie V. Hodge ("Plaintiff"), proceeding *pro se*, initiated this action against Keffer Mazda, Toyota Motor Credit Corporation, and Mazda Financial Services (collectively "Defendants").[1]  [Doc. 1].  On January 24, 2022, the Plaintiff filed an Amended Complaint.  [Doc. 5].  In her Amended Complaint, the Plaintiff alleges that the Defendants violated the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Truth in Lending Act as well as obtained and disclosed her "customer information" under false pretenses in violation of 15 U.S.C. § 6821.  [Id. at 25-26].

On March 15, 2022, Defendant Keffer Mazda filed a "Motion to Dismiss in Lieu of Answer, or in the Alternative, Motion to Stay Action and Compel Arbitration."  [Doc. 13].  On March 22, 2022, Defendant Toyota Motor Credit Corporation filed a "Joinder in Defendant Keffer Mazda's Motion to Dismiss in Lieu of Answer, or in the Alternative, Motion to Stay Action and Compel Arbitration." [Doc. 15].  The Plaintiff opposes the Defendants' motions.  [Doc. 16; Doc. 18].

---

[1] According to Defendant Toyota Motor Credit Corporation d/b/a Mazda Financial Services, the Plaintiff has incorrectly named Toyota Motor Credit Corporation and Mazda Financial Services as separate defendants.  [Doc. 15 at 1].  Accordingly, the Court will use "Toyota Motor Credit Corporation" to refer to both "Toyota Motor Credit Corporation" and "Mazda Financial Services."

On May 9, 2022, the Plaintiff filed a Motion for Summary Judgment. [Doc. 25].  On May 23, 2022, Defendant Toyota Motor Credit Corporation filed a "Motion to Stay Motion for Summary Judgment or Alternative Motion for Extension of Time."  [Doc. 26].

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides, in pertinent part, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L.Ed.2d 742 (2011) (internal citations and quotation marks omitted).  In keeping with these principles, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  Id. (internal citations omitted).  "In determining whether the dispute at issue is one to be resolved through arbitration, the court must engage in a limited review to ensure that the dispute is

3

arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Mansfield v. Vanderbilt Mortg. and Fin., Inc., 29 F. Supp. 3d 645, 652 (E.D.N.C. 2014). The Fourth Circuit has instructed that:

> application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016) (internal quotation marks and citation omitted).

However, "[s]ection 4 of the FAA requires the court to conduct a trial of the issue if there are sufficient facts support[ing] a party's denial of an agreement to arbitrate." Rowland v. Sandy Morris Fin. & Estate Planning Servs. LLC, 993 F.3d 253, 258 (4th Cir. 2021) (internal citations and quotation marks omitted). "Just as in traditional litigation, the district court must employ the summary judgment standard as a gatekeeper, so a trial occurs only if there are genuine issues of material fact." Id. (internal quotation marks omitted). "In applying that standard, the burden is on the defendant to establish[] the existence of a binding contract to arbitrate the dispute." Id. (internal quotation marks omitted).

4

## III. FACTUAL BACKGROUND

On October 9, 2020, the Plaintiff purchased a vehicle from Defendant Keffer Mazda in Huntersville, North Carolina.  [See Doc. 5 at ¶ 8; see also Doc. 5-3 at 2; Doc. 5-4; Doc. 5-11; Doc. 5-12; Doc. 5-13; Doc. 5-14; Doc. 13-1].  The Plaintiff paid a cash down payment in the amount of $2,200, and the remainder of the purchase was financed through Defendant Toyota Motor Credit Corporation.  [Doc. 5-3 at 2; Doc. 5-11].  The Plaintiff was to pay $530.43 each month for a period of seventy-five months, with the first payment becoming due in November of 2020.  [Doc. 5-4; Doc. 5-12].  Defendant Toyota Motor Credit Corporation retained a lien on the vehicle purchased by the Plaintiff.  [Doc. 5-3 at 2; Doc. 5-11].

The Plaintiff and Defendant Keffer Mazda executed a Vehicle Purchase Agreement memorializing these terms.  [See Doc. 5-3 at 2; Doc. 5-4; Doc. 5-11; Doc. 5-12; Doc. 5-13; Doc. 5-14; Doc. 13-1].  Defendant Keffer Mazda assigned its interest in the Vehicle Purchase Agreement to Defendant Toyota Motor Credit Corporation.  [Doc. 5-14].  The Vehicle Purchase Agreement was signed by the Plaintiff and a representative of Keffer Mazda.  [Doc. 13-1].  Further, the Vehicle Purchase Agreement contains an Arbitration Agreement which provides, in pertinent part, that:

> Any claim or dispute, whether in contract, tort, statute
> or otherwise (including the interpretation and scope

5

of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.  If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute.  Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.  You expressly waive any right you may have to arbitrate a class action.

[Doc. 5-3 at 2; Doc. 5-11; Doc. 13-1].  The Plaintiff initialed the Arbitration Agreement.  [Doc. 5-3 at 2; Doc. 5-11; Doc. 13-1].

In her Amended Complaint, the Plaintiff alleges that the Defendants obtained her personal financial information from the Vehicle Purchase Agreement, which she describes as a "credit application," and submitted a loan application "to receive an advance loan in [her] name."  [Doc. 5 at ¶ 8].  According to the Plaintiff, she did not agree to apply for a loan and, instead, she "applied for credit."  [See id. at ¶¶ 8, 15].  On December 20, 2021, Defendant Toyota Motor Credit Corporation sent the Plaintiff a notice stating that Toyota Motor Credit Corporation repossessed the Plaintiff's vehicle because she failed to make the monthly payments outlined in the Vehicle

Purchase Agreement and that Toyota Motor Credit Corporation planned to sell the vehicle at a private sale. [Doc. 5-17].

## IV. DISCUSSION

The claims asserted by the Plaintiff in the present civil action fall squarely within the scope of the Arbitration Agreement. The applicability of the Arbitration Agreement to this action is especially true in light of the fact that the Arbitration Agreement provides that "the arbitrability of the claim or dispute" is also subject to binding arbitration. [Doc. 5-3 at 2; Doc. 5-11; Doc. 13-1]. Furthermore, it is not disputed that the Vehicle Purchase Agreement involves and affects interstate commerce.

While the Plaintiff does not dispute that she signed the Vehicle Purchase Agreement and initialed the Arbitration Agreement, she argues that the Arbitration Agreement is nevertheless unenforceable because the Vehicle Purchase Agreement as a whole is based on fraud. [See Doc. 16 at 3-4; see also Doc. 18 at 4-6]. She further argues that the Defendants are "dead entities" that cannot be parties to the Vehicle Purchase Agreement, [Doc. 16 at 2; Doc. 18 at 2]; that Defendant Toyota Motor Credit Corporation did not sign the Vehicle Purchase Agreement, [Doc. 18 at 2]; that Defendant Toyota Motor Credit Corporation did not provide adequate consideration

7

necessary to make the Vehicle Purchase Agreement valid, [id.]; and that the Arbitration Agreement is unconscionable, [Doc. 16 at 5; Doc. 18 at 6].

"The law is well settled in this circuit that, if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity or enforceability of an arbitration provision on any grounds that exist at law or in equity for the revocation of any contract, the grounds must relate specifically to the arbitration clause and not just to the contract as a whole." Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 636 (4th Cir. 2002) (internal quotation marks and citations omitted). Thus, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, 126 S. Ct. 1204, 163 L.Ed.2d 1038 (2006).

However, "[t]he issue of the contract's validity is different from the issue [of] whether any agreement between the alleged obligor and obligee was ever concluded." Id. at 444 n.1. "[P]arties must actually contract to arbitrate disputes between them." Rowland, 993 F.3d at 258. Therefore, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296, 130 S. Ct. 2847, 177 L.Ed.2d 567 (2010); see also Peabody Holding

8

Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 104-05 (4th Cir. 2012) ("We must carefully consider any claims that the agreement— including its arbitration clause—was not executed properly . . . Thus where a contract commits to arbitration those matters 'arising under' the agreement, we may not submit questions of contract formation to the arbitrator, as those questions cannot 'arise under' an agreement that was never validly formed.").

### A. Formation of the Vehicle Purchase Agreement

The Plaintiff sets forth a series of arguments asserting that the Arbitration Agreement cannot be enforced because a contract was not formed between the Plaintiff and the Defendants.

The Vehicle Purchase Agreement was entered into in North Carolina, [see Doc. 5-11; see also Doc. 5-12], and, therefore, the Court will apply North Carolina law to determine whether a contract was formed. In North Carolina, the formation of a valid contract "requires offer, acceptance, consideration, and no defenses to formation." Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (quoting Koltis v. N.C. Dep't of Human Res., 125 N.C. App. 268, 480 S.E.2d 702, 704 (1997)).

The Plaintiff first argues that, because Keffer Mazda and Toyota Motor Credit Corporation are corporations, they are "dead entities, and do not have

a mind to be party to a contract [or] agreement." [Doc. 18 at 2; see also Doc. 16 at 2]. "A corporation is bound by a contract made by its agent acting within the scope of his actual or apparent authority." Northwestern Bank v. NCF Fin. Corp., 88 N.C. App. 614, 617, 365 S.E.2d 14, 17 (1988); see also Zimmerman v. Hogg & Allen, Pro. Ass'n, 286 N.C. 24, 30-31, 209 S.E.2d 795, 799-800 (1974) ("When a corporate agent acts within the scope of his apparent authority, and the third party has no notice of the limitation on such authority, the corporation will be bound by the acts of its agent…"); Lucas & Beach, Inc. v. Agri-East Grp., Inc., 245 N.C. App. 131, 138, 781 S.E.2d 718, 725 (2016) ("Under North Carolina law, it is well established that a corporation is liable as a principal for the acts of its agents in the same manner and to the same extent as are individuals under like circumstances."). Here, an employee of Defendant Keffer Mazda signed the Vehicle Purchase Agreement as an agent of Keffer Mazda, [Doc. 13-1; Doc. 5-14], and the Plaintiff does not argue that he lacked the authority to bind the corporation. Accordingly, the Vehicle Purchase Agreement is not void simply because the defendants are corporations.

The Plaintiff further argues that Defendant Toyota Motor Credit Corporation did not provide "a wet signature . . . to make the contract valid." [Doc. 18 at 2]. The Vehicle Purchase Agreement provides that Defendant

Keffer Mazda "assigns its interest in this contract to Toyota Motor Credit Corporation (Assignee) under the terms of the Seller's agreement(s) with Assignee." [Doc. 5-14]. The Arbitration Agreement further provides that it applies to "[a]ny claim or dispute . . . between [the Plaintiff] and [Keffer Mazda] or [Keffer Mazda's] employees, agents, successors or *assigns* . . ." [Doc. 5-3 at 2; Doc. 5-11; Doc. 13-1] (emphasis added). As such, the language of the contract makes it clear that Defendant Keffer Mazda's assignment of its interest in the Vehicle Purchase Agreement to Defendant Toyota Motor Credit Corporation carries with it the right of Toyota Motor Credit Corporation to enforce that interest, including its interest in the Arbitration Agreement, even though Toyota Motor Credit Corporation is not a signatory to the contract.

The Plaintiff also argues that the Vehicle Purchase Agreement is void because it was not supported by adequate consideration on the part of Toyota Motor Credit Corporation. [Doc. 18 at 2]. The Court is unclear as to whether the Plaintiff is arguing that there was not adequate consideration for the formation of the Vehicle Purchase Agreement or that there was not adequate consideration for Toyota Motor Credit Corporation's receipt of the assignment. There was adequate consideration for the formation of the Vehicle Purchase Agreement because Keffer Mazda delivered the vehicle to

the Plaintiff, and the Plaintiff promised to pay for it. [See Doc. 5-11; Doc. 5-12; Doc. 5-13; Doc. 5-14; Doc. 13-1]. To the extent that the Plaintiff is arguing that there was no consideration for Toyota Motor Credit Corporation's receipt of the assignment, her argument also fails. There was adequate consideration for Toyota Motor Credit Corporation's receipt of the assignment because Toyota Motor Credit Corporation paid Keffer Mazda to purchase the loan. [See Doc. 5-11; Doc. 5-12; Doc. 5-13; Doc. 5-14; Doc. 13-1].

The Plaintiff further argues that the Vehicle Purchase Agreement is void because "the contract is the product of fraud in the execution." [Doc. 16 at 4; see also Doc. 18 at 5]. Under North Carolina law, fraud in the execution, or fraud in the factum, occurs where there is a "disparity between the instrument executed and the one intended to be executed . . . [such as] where a grantor intends to execute a certain deed, and another is surreptitiously substituted." Furst & Thomas v. Merritt, 190 N.C. 397, 400, 130 S.E. 40, 43 (1925). Under such circumstances, the instrument executed is void. Id. Because no contract is formed in circumstances of fraud in the execution, courts must examine a claim of fraud in the execution to determine the existence of an agreement to arbitrate. See Gregory v. Interstate/Johnson Lane Corp., 188 F.3d 501 (Table), 1999 WL 674765, at

*4, 7-9 (4th Cir. 1999) (unpublished)[2] (holding that where a party contends that she did not assent to a contract containing an arbitration clause and, therefore, the existence of an agreement to arbitrate is at issue, the court must determine whether an agreement to arbitrate exists).

According to the Plaintiff, the Defendants defrauded her "by using [her] credit application as a loan application," and, therefore, "[t]he credit application and purchase agreement are both false and completely deceptive forms." [Doc. 16 at 5; <u>see also</u> Doc. 18 at 6-7]. Notably, the documents submitted by the Plaintiff with her Amended Complaint show that, under the Vehicle Purchase Agreement, a majority of the purchase price of the vehicle was to be financed by Defendant Toyota Motor Credit Corporation, and the Plaintiff was to make monthly payments starting in November of 2020. [Doc. 5-3 at 2; Doc. 5-11; Doc. 5-12; Doc. 5-13; Doc. 5-14]. The Plaintiff's assertion that the terms of the Vehicle Purchase Agreement constituted a "credit application" and not a "loan application" is merely a semantic argument with no discernible dispute regarding the materials terms or the purpose of the Vehicle Purchase Agreement.

---

[2] "Notice: This is an unpublished opinion. (The Court's decision is referenced in a 'Table of Decisions Without Reported Opinions' appearing in the Federal Reporter…[)]." <u>Gregory</u>, 188 F.3d at 501; 1999 WL 674765.

Accordingly, the record does not support the Plaintiff's argument that the Vehicle Purchase Agreement is a product of fraud in the execution.

For all these reasons, the Plaintiff makes no allegations to support a plausible claim defeating the formation of the Vehicle Purchase Agreement, and the record shows that a binding contract, which includes an agreement to arbitrate, exists between the Plaintiff and the Defendants. The Plaintiff's arguments that the Arbitration Agreement should not be enforced because a contract was not formed between the Plaintiff and the Defendants cannot serve as a basis to deny Defendant Keffer Mazda's Motion.

### B. Validity of the Vehicle Purchase Agreement

In addition to arguing that the Vehicle Purchase Agreement was never formed, the Plaintiff also appears to argue that her assent to the Vehicle Purchase Agreement was induced by fraud. [See Doc. 16 at 2-3, 5; see also Doc. 18 at 3-4]. Fraud in the inducement, or fraud in the treaty, arises where there is "some fraudulent representation or pretense, as, for example, where a person who can read the instrument neglects to do so because of some false representation, and executes it under a misapprehension as to its contents." Furst, 190 N.C. at 400, 130 S.E. at 43. In such circumstances, the instrument is not automatically void but is, instead, voidable. Id.; see also Fields v. Brown, 160 N.C. 295, 296-97, 76 S.E. 8, 9-10 (1912). Under

14

the FAA, courts may consider claims of fraud in the inducement of an arbitration provision itself, but courts may not consider claims of fraud in the inducement of the entire contract that contains the arbitration provision. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967).

To the extent that the Plaintiff is arguing that the Vehicle Purchase Agreement cannot be enforced because it was induced by fraud, her argument does not relate to the Arbitration Agreement specifically. Rather, the Plaintiff's argument that the Vehicle Purchase Agreement was induced by fraud calls into question the validity of the Vehicle Purchase Agreement as a whole. Because the validity of the entire agreement is an issue that is reserved for the arbitrator, it cannot serve as a basis to deny Defendant Keffer Mazda's Motion in this case. See Snowden, 290 F.3d at 636; see also Jeske v. Brooks, 875 F.2d 71, 75 (4th Cir. 1989) ("We also reject [the plaintiff's] arguments that the arbitration clause must be declared invalid on grounds that the customer's agreement as a whole is void due to 'overreaching, unconscionability and fraud,' as well as lack of consideration. Because the alleged defects pertain to the entire contract, rather than specifically to the arbitration clause, they are properly left to the arbitrator for resolution.").

## C. Validity of the Arbitration Provision

The Plaintiff further argues that the Arbitration Agreement should not be enforced because it is unconscionable. [Doc. 16 at 5-6; Doc. 18 at 6-7]. The question of unconscionability is one of state law. See, e.g., Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S. Ct. 2520, 96 L.Ed.2d 426 (1987). Here, because the Vehicle Purchase Agreement was entered into in North Carolina, [see Doc. 5-11; see also Doc. 5-12], the Court will apply the substantive law of North Carolina to determine whether the Arbitration Agreement is unconscionable.

The Party asserting that a contract is unconscionable has the burden of proof. Tillman v. Com. Credit Loans, Inc., 362 N.C. 93, 102, 655 S.E.2d 362, 369 (2008). A contract is unconscionable "when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Id. at 101, 655 S.E.2d at 369 (citation omitted). A party asserting unconscionability must prove that the contract is both procedurally and substantively unconscionable. Id. at 102, 655 S.E.2d at 370. "Substantive unconscionability . . . refers to harsh, one-sided, and oppressive contract terms." Id. at 102-03, 655 S.E.2d at 370 (citation

16

omitted). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. However, the North Carolina Court of Appeals has also explained that:

> [B]argaining inequality alone generally cannot establish procedural unconscionability. Otherwise, procedural unconscionability would exist in most contracts between corporations and consumers. There would nearly always be some degree of "inequality of bargaining power."

Westmoreland v. High Point Healthcare, Inc., 218 N.C. App. 76, 81, 721 S.E.2d 712, 717 (2012).

In support of her argument that the Arbitration Agreement is unconscionable, the Plaintiff asserts only that "[a]rbitration clauses may be tainted both because they result from an unfair process characterized by a massive disparity in bargaining power in which the consumer had no meaningful choice and because the terms are unreasonably favorable to the company." [Doc. 16 at 5; Doc. 18 at 6]. However, the fact that the Defendants may have been in a superior negotiating position to that of the Plaintiff, without more, does not render the parties' Arbitration Agreement procedurally unconscionable. Further, the Plaintiff does not otherwise explain how she lacked meaningful choice in the bargaining process or how the terms of the Arbitration Agreement are unreasonably favorable to the

17

Defendants.[3]  There is nothing in the Arbitration Agreement that is so oppressive or one-sided as to render its terms unconscionable.  Notably, the Arbitration Agreement states that the arbitrator is to be neutral, and both sides have equal power to invoke the arbitration clause.  [Doc. 5-3 at 2; Doc. 5-11; Doc. 13-1].  Further, there is nothing in the Arbitration Agreement to indicate that the Defendants have an unfair advantage in the arbitration setting.  Arbitration should be a less costly and more efficient means of dispute resolution for all of the parties, and arbitration should be easier for the Plaintiff to navigate than a court proceeding given the Plaintiff's decision to proceed pro se.  Accordingly, the Plaintiff's argument that the Arbitration Agreement should not be enforced because it is unconscionable cannot serve as a basis to deny Defendant Keffer Mazda's Motion.

### D.    Plaintiff's Motion for Summary Judgment

The Plaintiff seeks summary judgment on all of her claims.  [Doc. 25]. Summary judgment resolves parties' disputes on the merits.  <u>See</u> Fed. R. Civ. P. 56.  However, as explained elsewhere in this Order, the parties here have entered into a contract stating that the merits of their disputes are to be

---

[3] Instead, the Plaintiff continues to reiterate that the Arbitration Agreement is unenforceable because the Vehicle Purchase Agreement as a whole is rooted in fraud. [<u>See</u> Doc. 16 at 5-6; <u>see also</u> Doc. 18 at 6-7].  The Plaintiff's arguments regarding fraud have been addressed elsewhere in this Order.

resolved by arbitration, the Arbitration Agreement is enforceable, and the claims asserted by the Plaintiff in this action fall within the scope of the Arbitration Agreement. Therefore, the Court's ruling renders the Plaintiff's Motion for Summary Judgment moot.

Further, even if the Arbitration Agreement were not enforced, moving for summary judgment before conducting discovery is premature, unless the case may be resolved on a pure question of law. Here, the Plaintiff raises factual issues for which discovery would be necessary. Therefore, in any event, the Plaintiff's motion is premature.

Accordingly, the Plaintiff's Motion for Summary Judgment will be denied without prejudice.

## V. CONCLUSION

"When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, [§ 3 of] the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms." Murray v. United Food & Com. Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (internal citation omitted); 9 U.S.C. § 3.[4] The Plaintiff's

---

[4] The Defendants request that this matter be dismissed for lack of subject matter jurisdiction because all of the Plaintiff's claims are arbitrable. [Doc. 13-2 at 6-7]. The

claims are subject to arbitration because a valid and enforceable Arbitration Agreement exists, and the Plaintiff's claims are covered by that agreement. Accordingly, the Court will stay this matter pending the parties' arbitration.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Lake Norman Auto Mall, LLC d/b/a Keffer Mazda's "Motion to Dismiss in Lieu of Answer, or in the Alternative, Motion to Stay Action and Compel Arbitration" [Doc. 13] is **GRANTED IN PART** and **DENIED IN PART** such that:

(1)    The Motion to Dismiss is **DENIED;**

(2)    The Motion to Stay Action and Compel Arbitration is **GRANTED;**

(3)    The parties are hereby ordered to arbitrate their dispute in accordance with the terms of the parties' Arbitration Agreement [Doc. 5-11; Doc. 13-1]; and

(4)    This matter is hereby **STAYED** pending arbitration in accordance with the parties' Arbitration Agreement.

---

Court notes that there have been conflicting expressions by the Fourth Circuit as to whether dismissal in lieu of a stay is an authorized remedy under § 3. Compare Murray, 289 F.3d at 301 with Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3 … dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). This language in Choice Hotels, however, is dicta. See Blount v. Northrup Grumman Info. Tech. Overseas, Inc., No. 1:14-cv-919 (JCC/TCB), 2014 WL 5149704, at *5 (E.D. Va. Oct. 14, 2014). Therefore, based on Murray, the Court will follow the plain language of § 3 and stay the action.

**IT IS FURTHER ORDERED** that:

(1)    Defendant "Toyota Motor [Credit] Corporation d/b/a Mazda Financial Services' Joinder in Defendant Keffer Mazda's Motion to Dismiss in Lieu of Answer, or in the Alternative, Motion to Stay Action and Compel Arbitration" [Doc. 15] is **GRANTED;**

(2)    The Plaintiff's Motion for Summary Judgment [Doc. 25] is **DENIED WITHOUT PREJUDICE;** and

(3)    Defendant "Toyota Motor [Credit] Corporation d/b/a Mazda Financial Services' Motion to Stay Motion for Summary Judgment or Alternative Motion for Extension of Time" [Doc. 26] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the parties shall submit a status report every 90 days advising the Court of the status of the parties' arbitration until such time as the arbitration is completed.

**IT IS SO ORDERED.**

Signed: June 17, 2022

Martin Reidinger
Chief United States District Judge

21